[Civ. No. 56884. Second Dist., Div. Three. June 4, 1980.]

PATRICIA D. SHAVER, Plaintiff and Appellant, v.
CLARK EDWARD SHAVER et al., Defendants and Respondents.

COUNSEL

Gustin & Lynch, Gustin, Powell & Lynch and Helen B. Gustin for Plaintiff and Appellant.

Burt Pines, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, Mary Jo Curwen, Deputy City Attorney, and James Edward Green for Defendants and Respondents.

OPINION

**ALLPORT, J.**—In a second amended complaint Patricia D. Shaver seeks a declaratory judgment determining her to be entitled to a propor-

tionate share of the retirement benefits being received by Clark Edward Shaver under the pension system for firemen and policemen of the City of Los Angeles administered by the board of pension commissioners of said city. It is alleged that Patricia and Clark were married on August 30, 1947, and, after approximately 20 years the marriage was dissolved on September 26, 1967, and a final judgment entered on November 29 of that year, that Clark became a city fireman on November 2, 1948, serving in that capacity for 28 years and 103 days or until February 13, 1977, at which time he retired entitled to receive the pension; that the judgment of divorce disposed of all community assets except the pension benefits of which no mention was made. Plaintiff also alleges that Clark has been receiving all the monthly pension benefits since February 13, 1977, in an unknown amount without her consent. Patricia seeks a declaration of her rights and appropriate orders assuring payment of the share to which she is now found to be entitled.

The board of pension commissioners demurred on the ground that there was no allegation of a reservation of jurisdiction in the divorce judgment to divide the pension rights at a future date, and Clark did likewise on the ground that no cause of action is stated because there is no allegation that the pension rights were vested prior to the dissolution of the marriage. Both demurrers were sustained without leave to amend upon the ground of failure to state a cause of action and the court below entered orders dismissing the action against both defendants.[1] Patricia appeals from the orders of dismissal (judgments).

CONTENTIONS

It is contended on appeal that the trial court erred in concluding that the pension rights, a community asset, were terminated by the divorce judgment and, on the contrary, that the parties remained tenants in common in these rights until the marriage was dissolved and that an accounting for and distribution of the funds due after Clark's retirement is in order. We disagree, and for reasons to follow will affirm.

DISCUSSION

■ At the time the Shaver marriage was dissolved in 1967, a nonvested right to receive retirement pay was deemed an "expectancy

---

[1]The complaint for divorce lists a "Pension Fund" as a community asset. The answer to the complaint for divorce denied that the parties had any interest in the fund or that the fund was a community asset. The judgment fails to make any mention of the fund.

which is not subject to division as community property." (*French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366].)

In *In re Marriage of Brown* (1976) 15 Cal.3d 838, 841-842 [126 Cal.Rptr. 333, 544 P.2d 561, 94 A.L.R.3d 164], our Supreme Court overruled the holding in *French* and several subsequent cases which followed it and held that pension rights (vested or nonvested) are a property interest and to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding. In so holding, the court carefully defined the correct terminology relating to the vested or nonvested status of pension rights. It said in this respect (*id.*, at p. 842): "Before we turn to the facts of this appeal we must devote a few words to terminology. Some decisions that discuss pension rights, but do not involve division of marital property, describe a pension right as 'vested' if the employer cannot unilaterally repudiate that right without terminating the employment relationship. (See *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45 [112 Cal.Rptr. 805, 520 P.2d 29]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104].) As we explain later, we believe that these decisions correctly define the point at which a pension right becomes a property interest. *In divorce and dissolution cases following French v. French, however, the term 'vested' has acquired a special meaning; it refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. We shall use the term 'vested' in this latter sense as defining a pension right which survives the discharge or voluntary termination of the employee.*

"As so defined, a vested pension right must be distinguished from a 'matured' or unconditional right to immediate payment. Depending upon the provisions of the retirement program, an employee's right may vest after a term of service even though it does not mature until he reaches retirement age and elects to retire. Such vested but immature rights are frequently subject to the condition, among others, that the employee survive until retirement. [Fns. omitted.]" (Italics added.)

The *Brown* court then proceeded to discuss the extent to which the new rule would be given retroactive application in respect of existing decrees dividing marital property, as follows (15 Cal.3d at pp. 850-851): "Robert finally contends that any decision overruling *French* v.

*French, supra,* 17 Cal.2d 775 should be given purely prospective effect. Although as we explain our decision cannot be accorded complete retroactivity without upsetting final judgments of long standing, we believe the decision may properly govern any case in which no final judgment dividing the marital property has been rendered.

"Although as a general rule 'a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation' (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680]), we have recognized exceptions to that proposition when considerations of fairness and public policy preclude full retroactivity (see *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 800-801 [87 Cal.Rptr. 839, 471 P.2d 487]; *Forster Shipbldg. Co.* v. *County of L.A.* (1960) 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736]). In *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal. Rptr. 837, 491 P.2d 421], we observed that the resolution of this issue of prospective application turns primarily on two factors: 'the extent of the public reliance upon the former rule, . . . [and] the ability of litigants to foresee the coming change in the law.' In the present case both factors militate against a purely prospective overruling of *French* v. *French.* It is unlikely that a layman would rely upon the *French* rule, or even know of that doctrine; attorneys familiar with the decision in *French* v. *French* would also realize from our opinion in *Marriage of Wilson, supra,* 10 Cal.3d 851 that the *French* rule was ripe for reconsideration. The unjust distribution of property engendered by the *French* rule should not be perpetuated by denial of *any* retrospective effect to our decision.

"On the other hand, if we accord complete retroactivity to our decision today we might reopen controversies long settled by final judgment. Undoubtedly in the 35 years since the rendition of *French* v. *French,* counsel, relying on that decision, have often failed to list nonvested pension rights as among the community assets of the marriage. In some cases the inability of the nonemployee spouse to assert an interest in nonvested pension rights may have induced the court to award additional alimony. Yet under settled principles of California community property law, 'property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile.' (*In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59].) Consequently full retroactivity poses the danger that a

nonemployee spouse might upset a settled property distribution by a belated assertion of an interest as a tenant in common in the employee's nonvested pension rights.

*"We conclude that our decision today should not apply retroactively to permit a nonemployee spouse to assert an interest in nonvested pension rights when the property rights of the marriage have already been adjudicated by a decree of dissolution or separation which has become final as to such adjudication, unless the decree expressly reserved jurisdiction to divide such pension rights at a later date* (see Civ. Code, § 4800). Our decision will apply retroactively, however, to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights." (Fn. omitted.) (Italics added.)

The divorce in this case was final as to the property rights of the marriage before the decision in *Brown*, and the decree did not expressly reserve jurisdiction to divide the pension rights. Patricia's rights to a division of the pension were thus governed by the rule stated "[i]n divorce and dissolution cases following *French* v. *French"* (*id.*, at p. 842) which held that the nonemployee spouse had no interest in a pension unless the employee spouse had a "vested" pension right at the time of the divorce. ▮ As the opinion in *Brown* explains, for this purpose "vested" has a "special meaning," to wit: "a pension right which survives the discharge or voluntary termination of the employee." (*Ibid.*)

▮ Patricia has not alleged that Clark's pension rights were vested in this sense, and the contrary is apparent from the facts alleged. Clark had been employed as a fireman for less than 19 years at the time the marriage was dissolved. Los Angeles City Charter sections 181 and 186-1/2 clearly require that a fireman serve a minimum of 20 years in order to be entitled to any retirement benefits and negate any right to repayment of contributions deducted from salary except through such retirement benefits.

The 1967 decree did not so adjudicate the parties' rights in the pension as to be res judicata. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10]; *Gorman* v. *Gorman* (1979) 90 Cal. App.3d 454, 463 [153 Cal.Rptr. 479].) But such rights still must be ad-

judicated pursuant to the rule applicable in 1967, as laid down in *Brown*. Both *Henn* and *Gorman* allowed subsequent division because the nonemployee had a divisible interest in the pension at the time of the original decree. In *Henn*, this resulted from our Supreme Court's determination that full retroactive effect be given to the decision in *In re Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], making a fully matured "vested" military pension divisible as community property. In *Gorman*, as well, the pension clearly was "vested" at the time the marriage was dissolved since the employee spouse was already retired. Consequently, neither *Henn* nor *Gorman* is helpful to Patricia who had no divisible interest in Clark's nonvested pension. The case at bench thus comes squarely within the situation contemplated by our Supreme Court in *Brown* in which "a settled property disposition" should not be "upset" by "a belated assertion of an interest as a tenant in common in the employee's nonvested pension rights" (15 Cal.3d at p. 851), and the demurrer was properly sustained.

The judgments are affirmed.

Cobey, Acting P. J., and Potter, J., concurred.