[No. D008778. Fourth Dist., Div. One. Dec. 20, 1989.]

SHARON J. BERRY, Plaintiff and Respondent, v.
DAVID L. BERRY, Defendant and Appellant.

COUNSEL

E. Stephen Temko for Plaintiff and Respondent.

Ronald W. Noya for Defendant and Appellant.

OPINION

**WORK, J.**—The trial court divided David's military retirement pension in a partition action filed by Sharon. We hold the trial court properly characterized the pension as community property, and that former Civil Code[1] section 5124 does not create a bar to common law equitable partition actions. The judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Sharon and David dissolved their marriage by an Arizona judgment entered July 7, 1982. The judgment omits any reference to David's military pension earned during the marriage. In April 1987, Sharon filed a California action to partition the omitted military pension, and the trial court did so.

---

[1] All statutory references are to former Civil Code section 5124 unless otherwise specified.

ANALYSIS

David argues the court's action was improper since (1) Sharon brought the action for partition after the expiration of the time period required by section 5124, and (2) alternatively, the pension was not a community property asset at the time of the 1982 dissolution since *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728]—which held that military pensions were separate property—was then the governing law.

Prior to *McCarty,* California characterized military pensions earned during marriage as community property. (*In re Marriage of Barnes* (1987) 43 Cal.3d 1371, 1374 [240 Cal.Rptr. 855, 743 P.2d 915].) In *McCarty,* the United States Supreme Court held the states could not treat the pensions as community property. Congress then negated the effect of *McCarty* by enacting the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA) (10 U.S.C. § 1401 et seq.), allowing the states to treat military pensions as community property.

FUSFSPA was given retroactive effect for judgments not yet final on the effective date of its enactment. (*In re Marriage of Barnes, supra,* 43 Cal.3d at p. 1375.) However, a "window period" was created for final judgments entered between June 25, 1981 (the date of the *McCarty* decision) and February 1, 1983 (the effective date of FUSFSPA). California enacted section 5124[2] permitting spouses whose judgments became final between those dates to obtain a modification of the judgments to include a division of military retirement benefits payable on or after February 1, 1983. (*In re Marriage of Barnes, supra,* 43 Cal.3d at p. 1375.) Section 5124 required that the modification proceeding be brought before January 1, 1986.

Section 5124 was necessary for those spouses whose final judgments adjudicated the pension as separate property. ■ When a final dissolution

---

[2]Section 5124 stated:

"(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

judgment divides property, that judgment cannot be modified later, unless the court expressly reserves jurisdiction to do so. (*Mueller* v. *Walker* (1985) 167 Cal.App.3d 600, 605-606 [213 Cal Rptr. 442].) On the other hand, when a community property claim is left unmentioned in a final dissolution judgment, the parties own the property as tenants in common and it may be divided in a separate partition action. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 330-332 [161 Cal.Rptr. 502, 605 p.2d 10].) As explained in *Henn,* a spouse's right to bring a separate partition action to divide assets omitted from a dissolution judgment has long been recognized at common law.

"Under California law, a spouse's entitlement to a share of the community property arises at the time that the property is acquired. [Citation.] That interest is not altered except by judicial decree or an agreement between the parties. Hence 'under settled principles of California community property law, "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile." ' [Citations.] This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever." (26 Cal.3d at p. 330.)

*Henn* v. *Henn, supra,* 26 Cal.3d at pages 329-331, holds the doctrine of res judicata does not bar the division of omitted pensions in separate actions, because the spouse's interest in omitted community property is independent of and predates the original decree of dissolution and property settlement. Because the omitted property is not before the court which issued the final dissolution decree, the judgment of that court cannot be said to have extinguished the spouse's putative interest in that asset. (*Id.* at p. 330.) Further, the dissolution action does not collaterally estop the spouse from litigating the pension issue, since the spouse was not "relying upon some specific factual or legal contention which would have been relevant to the adjudication of the parties' rights to the property distributed" in the dissolution action. (*Id.* at p. 331.)

*Henn* also holds the denial of the spouse's earlier motion to modify the dissolution decree does not bar the partition action, since it was not possible to ascertain the basis of the court's ruling in denying the motion. (26 Cal.3d at pp. 331-332.) In so holding, *Henn* observes there "are no reported decisions that have held that a community property claim to an asset left unmentioned in a prior judicial division of community property may be adjudicated in a motion to modify the prior decree. The only reported decisions that address this issue correctly conclude that such claims may only be adjudicated in a separate action. [Citations.]" (*Id.* at p. 332.)

 Thus, based on *Henn* and long-established common law, Sharon had a right to bring a separate action to divide the pension since it is undisputed the issue was not adjudicated in the Arizona dissolution decree. Since she did not need to make a motion to modify the judgment, she was not bound by the modification provisions of section 5124.

David points to the language in section 5124 which allowed the use of its modification procedure even for judgments which "omitted any reference to a military pension." We are not persuaded that the Legislature intended the remedial statute—designed to give spouses who obtained final judgments during the short-lived *McCarty* decision an opportunity to obtain their share of the pensions—to simultaneously extinguish the well-established right to a separate partition action for omitted assets merely because the spouse's judgment fell within section 5124's "window period."[3] We construe section 5124's reference to omitted assets as simply constituting an across-the-board extension of the temporary right to bring a modification procedure to all spouses with final judgments seeking their share of a military pension—including those spouses whose pensions were omitted from the judgment, and who, absent such statutory authorization, were required to bring a separate partition action.

 In short, Sharon, whose interest in the pension was not adjudicated in the dissolution judgment, could not seek relief through modification of the original judgment after the January 1986 expiration date of section 5124. However, she is not precluded from bringing this separate partition action under the common law principles summarized in *Henn.*

David argues allowing Sharon to bring a partition action after section 5124's expiration date defeats the apparent legislative intent of providing finality for the military pension holder. *Henn* addresses his concern by pointing out the trial court's broad powers to limit equitable relief in a partition action. For example, the trial court may limit the retrospective enforcement of the partition claim, and may consider the defense of laches

---

[3] As pointed out by Sharon, if section 5124 precluded partition actions for spouses whose judgments were entered during the *McCarty*-FUSFSPA window period, then those "window period" spouses with omitted pensions would be bound by section 5124's expiration date, whereas spouses with omitted pensions in judgments entered before or after the window period would not be so bound.

We can perceive no justification for such a distinction between "window-period" omitted asset judgments and "non-window period" omitted asset judgments. As pointed out in *Casas v. Thompson* (1986) 42 Cal.3d 131, 141 [228 Cal.Rptr. 33, 720 P.2d 921]: "*Henn* implicitly holds . . . that the policy favoring equitable division of marital property outweighs that of stability and finality *in the limited context of omitted assets.*" (Italics added.) This policy applies equally to all omitted asset spouses, regardless of when the judgment was entered, subject of course to the trial court's equitable power to consider and prevent unjust results in making the award.

to alleviate any potential unfairness to a military pension holder who has disposed of pension assets as separate property. (*Henn* v. *Henn, supra,* 26 Cal.3d at pp. 332-333; see also *Casas* v. *Thompson, supra,* 42 Cal.3d at p. 141.) Here, David does not assert any specific unfairness in the trial court's award.

Finally, we reject David's contention the pension was his separate property under *McCarty* at the time of the 1982 dissolution. It is true the pension must be characterized by the governing law at the time of the 1982 divorce adjudication. In *Casas* v. *Thompson, supra,* 42 Cal.3d at page 141, the court states: "*Henn* authorizes an independent action to partition omitted pensions only if the nonemployee spouse had a divisible interest in the asset at the time of the original decree." The court explains the character of the asset is established at the time of its acquisition and that character is not altered when the asset is omitted from the divorce decree. If the omitted asset was a community property asset, that unadjudicated property right continued in the form of a tenancy in common. In contrast, if there was no community interest at the time of the divorce decree, there is nothing to partition. (*Id.* at p. 139; see *Shaver* v. *Shaver* (1980) 107 Cal.App.3d 788, 794 [165 Cal.Rptr. 672].)[4]

However, FUSFSPA has been given retroactive effect so as to erase the impact of *McCarty* and to revive California community property law as the controlling law as of the June 1981 date of *McCarty.* (*In re Marriage of Barnes, supra,* 43 Cal.3d at pp. 1375, 1377; *Casas* v. *Thompson, supra,* 42 Cal.3d at p. 140.) Thus, based on FUSFSPA's obliteration of *McCarty,* at the time of the 1982 dissolution decree here California community property law, not *McCarty,* controlled, and the omitted asset was properly subject to partition.[5]

---

[4] In *Casas,* a partition action was litigated during the period of time when both *McCarty* and FUSFSPA came into existence. On appeal, the California Supreme Court held that at the time of the 1966 divorce decree involved therein, the omitted pension was community property under California law (based on a retroactive application of *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]). *Casas* holds *McCarty*—which changed settled California law—did not apply retroactively to change the character of the asset to separate property. (*Casas* v. *Thompson, supra,* 42 Cal.3d at p. 141.)

In *Shaver,* a partition action was brought after the California Supreme Court in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] had changed California law to include nonvested military pensions in community assets. At the time of the 1967 divorce decree in *Shaver,* under California law a nonvested pension was separate property. The Supreme Court in *Brown* had stated its holding was not to be given full retroactive effect to upset long-settled judgments via partition actions. Accordingly, *Shaver* holds the omitted nonvested pension could not be partitioned since at the time of the 1967 divorce decree the nonvested pension was separate property under the law before *Brown.*

[5] Given our holding, we need not address Sharon's alternative argument that Arizona law could be applied to uphold the judgment. David does not contend California law does not apply.

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Froehlich, J., concurred.